UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Camden National Bank

     v.                          Civil No. 17-cv-272-JL
                                    Opinion No. 2017 DNH 235

Greystone Select Holdings, LLC


**MEMORANDUM ORDER**

This case involves a dispute over the terms of a loan guaranty.  Invoking this court's diversity jurisdiction, 28 U.S.C. § 1332, plaintiff Camden National Bank ("Camden") claims that Greystone Select Holdings, LLC ("Greystone"), which guaranteed a loan Camden made to a third-party borrower, breached its contractual obligation and was unjustly enriched when it refused to pay Camden a contractually-required sum following the borrower's bankruptcy.  Claiming that the guaranty agreement requires Camden first to foreclose on the borrower's collateral before its obligation to pay is triggered and that there can be no unjust enrichment where the parties' obligations are delineated by contract, Greystone moves to dismiss.  See Fed. R. Civ. P. 12(b)(6).  After reviewing the parties' submissions and the contract at issue, and conducting oral argument, the court finds that the contract is ambiguous as to whether foreclosure is required in order to trigger Greystone's

obligation.  The motion to dismiss Camden's breach of contract claim is therefore denied.  Greystone is correct, however, that Camden's unjust enrichment claim can not lie where, as here, the parties' rights and responsibilities are circumscribed by a valid contract.  That claim is, therefore, dismissed.

## I.  <u>Applicable legal standard</u>

To state a claim for relief and withstand a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015)</u> (quoting <u>Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)</u>).  In ruling on such a motion, the court accepts as true all well-pleaded facts set forth in the complaint and draws all reasonable inferences in the plaintiff's favor.  <u>See,</u> <u>e.g.,</u> <u>Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010)</u>.

The court "may consider not only the complaint but also facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." <u>Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009)</u> (internal quotations omitted).  The court "need not, however, credit bald assertions, subjective characterizations, optimistic predictions, or problematic

suppositions," and "[e]mpirically unverifiable conclusions, not logically compelled, or at least supported, by the stated facts, deserve no deference." Sea Shore Corp. v. Sullivan, 158 F.3d 51, 54 (1st Cir. 1998) (internal quotations omitted). Guided by these standards, the court turns first to Camden's allegations and the parties' agreement.

## II.  **Factual background**

### A.  The loan and guaranty

In 2014, operators of an assisted living facility in Rye, New Hampshire, borrowed $12 million from Camden to use in connection with the operation of the facility, known as Sanctuary Care at Rye.[1]  The loan was memorialized in a note executed in Camden's favor.[2]  As additional security for the loan and note, the defendant executed a Limited Guaranty of Payment and Performance in Camden's favor.[3]  The gist of the Guaranty is that Greystone is obligated to pay up to $2 million to Camden if the borrower defaults on the loan.[4]

---

[1] Complaint, doc. no. 1, ¶¶ 5-6.

[2] Id., Exh. A, doc. no. 1-4.

[3] Id. ¶ 7; Id., Exh. B, doc. no. 1-5.

[4] Id. ¶¶ 7-8.

In 2017, the borrower filed petitions for protection under Chapter 11 of the United States Bankruptcy Code. This was a default under the terms of the loan.[5] Relying on the default and certain language in the guaranty agreement, Camden demanded $2 million from Greystone, which it has refused to pay, claiming that the Guaranty requires Camden to foreclose on the borrower's collateral before any payment is required.[6]

B.     Disputed guaranty language

While they disagree about its meaning, the parties agree that interpretation of the following contractual provision is determinative of Greystone's obligation:

> Notwithstanding anything contained herein to the contrary, Guarantor's liability under this Guaranty shall be (a) limited in amount to Two Million and 00/100 Dollars ($2,000,000.00) (the "Maximum Guaranty Amount.") and (b) **Guarantor's liability and the performance of its obligations under this Guaranty shall only be due, payable and enforced against the Guarantor after Lender has (a) completed a foreclosure action (judicial or non-judicial) or accepted a deed in lieu of foreclosure with respect to the Borrower's collateral** securing the Loan ("Loan Collateral") and (b) at the written request of the Guarantor and at Guarantor's sole cost obtained an initial determination by a court of competent jurisdiction, exclusive of any appeals, against Jonathan McCoy and Scott Kingsley ("Sponsor Guarantors") regarding its ability to enforce their guaranty executed and delivered in conjunction with the Loan; **provided however, should Borrower or either**

---

[5] Id., Exh. A, doc. no. 1-4, at 4.

[6] Id. ¶¶ 11-12.

**of the Sponsor Guarantors file a voluntary or collusive involuntary bankruptcy, then Guarantor's liability  and  the performance of its obligations under this Guaranty shall become immediately due,** payable and enforceable in an amount equal to the lesser of the Maximum Guaranty Amount or the deficiency (the "Deficiency") due from Borrower **after completion of the foreclosure of the Loan Collateral.** Lender's outstanding loan balance (the "Lender's Outstanding Loan Balance") shall be the sum of the outstanding principal then due on the Loan, plus all accrued interest and costs and expenses, including reasonable attorneys' fees.  The amount of Lender's Deficiency for purposes of this paragraph, if any, subsequent to completion of the foreclosure shall be Lender's Outstanding Loan Balance less the third party net sales price (i.e. the gross sales price less transfer taxes and prorations paid by Lender). If the Lender acquires the Mortgaged Property at foreclosure, the amount of the Lender's Deficiency, if any, shall be the Lender's Outstanding Loan Balance less the amount bid in by the Lender.

(Emphasis added).

## III.  Legal analysis

A.  <u>Breach of contract</u>

The parties agree that the guaranty agreement is governed by New Hampshire law.[7]  The interpretation of a contract, including whether a contract term is ambiguous, is ultimately a question of law.  <u>Birch Broad., Inc. v. Capitol Broad. Corp., 161 N.H. 192, 196 (2010)</u>.  When interpreting a contract, the court must "give the language used by the parties its reasonable

---

[7] The agreement provides that it is to be interpreted according to "the laws of the state where the land is located," doc. no. 1-5 ¶ 13.

meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole."  In re Liquidation of Home Ins. Co., 166 N.H. 84, 88 (2014) (internal quotations omitted).  "The language of a contract is ambiguous if the parties to the contract could reasonably disagree as to the meaning of that language."  Found. for Seacoast Health v. Hosp. Corp. of Am., 165 N.H. 168, 172 (2013) (quoting Birch Broad., 161 N.H. at 196).  Absent ambiguity, "the parties' intent will be determined from the plain meaning of the language used in the contract."  Id. (internal quotations omitted).  Where contract terms are ambiguous, determining the meaning of the ambiguous terms is left to the trier of fact.[8]  Dillman v. New Hampshire Coll., 150 N.H. 431, 434 (2003).

Greystone first argues that the above language unambiguously provides that no obligation to pay is triggered unless Camden first forecloses on the borrower's collateral.  In particular, Greystone points to the following language: "Guarantor's liability and the performance of its obligations under this Guaranty shall only be due, payable and enforced . . . after Lender has (a) completed a foreclosure action . . . or

_____

[8] Greystone waived its right to a jury trial in the Guaranty agreement, doc. no. 1-5 at 9, and plaintiff did not request a jury trial when it initiated this suit, doc. no. 1-2.

accepted a deed in lieu of foreclosure" and, if requested by Greystone, received a judicial determination of Camden's ability to enforce a guaranty it received from the borrower's principals.[9]

Camden, on the other hand, reads the guaranty as containing two potential, but independent, triggers to Greystone's obligation -- foreclosure _or_ bankruptcy.[10]  While Camden agrees that foreclosure _could_ trigger Greystone's obligation to perform, it argues that the language immediately following the foreclosure provisions establishes Greystone's liability in the event of the borrower's bankruptcy, with no further preconditions.  Camden specifically references the following language:

> provided however, should Borrower or either of the Sponsor Guarantors file a voluntary or collusive involuntary bankruptcy, then Guarantor's liability and the performance of its obligations under this Guaranty shall become immediately due, payable and enforceable in an amount equal to the lesser of the Maximum Guaranty Amount or the deficiency (the "Deficiency") due from Borrower after completion of the foreclosure of the Loan Collateral.[11]

Greystone, however, argues that the earlier reference to "foreclosure" as well as the phrase "after completion of the

---

[9] Doc. no. 1-5 at 2.

[10] Pltff. Obj., doc. no. 8, at 9.

[11] Doc. no. 1-5 at 2.

foreclosure" following the phrase "shall become immediately due" conclusively demonstrates that Camden must foreclose before Greystone is obligated to pay. At a minimum, Greystone argues, even if its obligation has been triggered, the amount it has to pay under the terms of the guaranty agreement can not be determined until a post-foreclosure deficiency[12] is established. As to the latter point, Camden counters that a deficiency calculation is only required _if_ there is a foreclosure; if there is no foreclosure, but only a bankruptcy, then Greystone must pay the $2 million maximum allowed under the contract.

Greystone's final argument is rooted in the fact that the guaranty agreement details how Camden is to repay any excess it receives from Greystone should Camden purchase the property at foreclosure -- triggering Greystone's obligation to pay the deficiency (up to $2 million) based on Camden's bid -- but later sell it for an amount that reduces Camden's loss to an amount that is less than what it received from Greystone. The absence of a similar excess repayment scheme in the bankruptcy context, Greystone argues, suggests that the contract requires it to perform only after foreclosure.

---

[12] The agreement explains at length how such a post-foreclosure deficiency is calculated. In summary, a deficiency would be the difference between the loan balance and the foreclosure sale price, whether a third party or Camden acquires the property.

Camden's response is straightforward.  It argues that post-bankruptcy, "[w]hether the amount owed is the Maximum Guaranty Amount [$2 million] or the Deficiency (if less than the Maximum Guaranty Amount) depends on whether a foreclosure sale has already been conducted or not."[13]  If there is only a bankruptcy -- as in the present case -- then the maximum is due; if there has been a foreclosure, the deficiency calculations will occur. But in either scenario, Camden asserts, Greystone's obligation is triggered solely by the borrower's bankruptcy.

At this stage of the proceedings, the court finds that both sides' interpretations of the plain language of the guaranty are reasonable.  Greystone's position -- that, bankruptcy notwithstanding, a foreclosure is necessary to trigger its obligation -- finds support in the language that its obligation to perform "shall only become due, payable and enforced after . . . a foreclosure action," combined with the post-bankruptcy proviso language that includes within the definition of the amount due the clause "after completion of the foreclosure of the Loan Collateral," without qualifying the latter with such language as "if applicable."

At the same time, the "provided, however" clause -- under which Greystone's obligation is "immediately due, payable and

---

[13] Pltff. Obj., doc. no. 8, at 10.

enforceable" after the borrower's bankruptcy, supports Camden's position that the borrower's bankruptcy is an alternative means to triggering Greystone's obligation, regardless of whether it has foreclosed on the borrower's collateral. In addition, it is a plausible reading of the damage provision that "the lesser of the Maximum Guaranty amount or the deficiency due from the borrower after . . . foreclosure" does _not_ require foreclosure, but instead could mean _either_ that the $2 million maximum is due in the absence of foreclosure, or, as Greystone suggests,[14] that no money is due, because the amount of deficiency after a non-existent foreclosure (zero) is less than the maximum.

In light of the various reasonable interpretations of the guaranty language, the court finds that the contract is ambiguous as to whether Greystone's obligation was triggered by the borrower's bankruptcy in the absence of Camden's foreclosure of the borrower's collateral. Therefore, dismissal of Camden's breach of contract claim on the basis of Rule 12(b)(6) is inappropriate.

B    Unjust enrichment

In Count 2, Camden asserts that Greystone was unjustly enriched by virtue of the income stream it received from the

---

[14] Def. Reply Mem., doc. no. 10, at 6.

borrowers in exchange for the loan guaranty.  However, with certain exceptions not applicable here, New Hampshire law does not permit an unjust enrichment claim where the parties' relationship is governed by contract, as it is here.

"Unjust enrichment is an equitable remedy, found where an individual receives a benefit which would be unconscionable for him to retain." Clapp v. Goffstown Sch. Dist., 159 N.H. 206, 210 (2009) (quotation omitted).  One limitation on the remedy of unjust enrichment is that it can not "supplant the terms of an agreement." Id. (citing 42 C.J.S. Implied Contracts § 38 (2007) ("[U]njust enrichment . . . is not a means for shifting the risk one has assumed under contract.").  "It is a well-established principle that the court ordinarily cannot allow recovery under a theory of unjust enrichment where there is a valid, express contract covering the subject matter at hand." Id. at 210-11 (citing J.G.M.C.J. v. Sears, Roebuck & Company, 391 F.3d 364, 369 (1st Cir. 2004) (applying New Hampshire law)).

At first glance, applying this legal construct to plaintiff's claim seems inexorably to lead to dismissal.  As plaintiff point out, however, the Court in Clapp noted that "[u]njust enrichment may be available to contracting parties where the contract was breached, rescinded, or otherwise made invalid, or where the benefit received was outside the scope of the contract." 159 N.H. at 211.  (citing Restatement of

Restitution § 107(1); Restatement (Third) of Restitution and Unjust Enrichment § 2 comment c at 16.  Camden argues that because it has alleged a contract breach, it may pursue an unjust enrichment claim.  This argument sweeps too broadly, as it would serve as an exception that swallows the general rule.  Instead, the court reads the statement in Clapp as requiring an allegation of breach that would render the contract invalid, void or voidable, arguments which plaintiff's counsel explicitly disclaimed at oral argument.  The court's view is reinforced by the Restatement section cited by Clapp, which first notes that "[r]estitution claims of great practical significance arise in a contractual context," but cautions that "they occur at the margins, when a valuable performance has been rendered under a contract that is invalid, or subject to avoidance, or otherwise ineffective to regulate the parties' obligations."  Restatement (Third) of Restitution and Unjust Enrichment § 2 comment c at 16).[15]

---

[15] Camden advanced another theory at oral argument in support of its unjust enrichment claim.  It suggested that once the borrower went into bankruptcy, Greystone agreed to assist in securing a buyer of the collateral from the bankruptcy estate, all the while stating that it intended to satisfy its obligations under the guaranty.  Avoiding guarantor liability under these circumstances, Camden argues, amounts to unjust enrichment.  Camden did not allege this conduct in its complaint, however, and cites no authority (or case involving

Here, there is no allegation in the Complaint that the guaranty contract is somehow "invalid, or subject to avoidance, or otherwise ineffective to regulate the parties' obligations." The plaintiff stands by the validity of the guaranty and seeks to enforce it.  Accordingly, plaintiff's claim for unjust enrichment must be dismissed.

## IV.  **Conclusion**

Greystone's motion to dismiss[16] is DENIED as to Count 1 (breach of contract), and GRANTED as to Count 2 (unjust enrichment.)

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  November 3, 2017

cc:  Christopher M. Candon, Esq.
     Michael J. Lambert, Esq.
     Edmond J. Ford, Esq.

_____

analogous factual circumstances) in support of this purported variation of unjust enrichment.

[16] Doc. no. 7.